**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LAURA KAPPEL, individually and as personal representative of the ESTATE OF WILLIAM KAPPEL, JR.; and JACQUELINE ZINK, <br><br> Plaintiffs, <br><br> vs. <br><br> C&L TRAVEL, INC. d/b/a MYNT; TIMOTHY GREGOWICZ; COAST, LLC d/b/a COAST BAR & GRILL; and THOMAS CADE GARRIS, <br><br> Defendants. | Case No. 2:19-CV-00498-DCN <br><br> **FIRST AMENDED COMPLAINT** <br> Jury Trial Demanded |

### NATURE OF THE ACTION

1. Plaintiffs file this civil action to seek redress for catastrophic personal injuries they suffered as a proximate result of Defendants' negligent, grossly negligent, and reckless conduct that caused a deadly motor vehicle collision at the intersection of Meeting and Columbus Streets in Charleston, South Carolina.

2. On January 26, 2019, at approximately 2:15 am, Plaintiff Laura Kappel, her husband William Kappel, Jr. (deceased), and their friend Plaintiff Jacqueline Zink were all leaving downtown Charleston in a car that was struck violently by a truck driven by Defendant Thomas Cade Garris ("Garris"), who now faces criminal charges of Felony DUI Resulting in Death, Felony DUI Resulting in Great Bodily Injury, and Reckless Homicide.

3. Plaintiffs' subsequent investigation into the events of January 25-26, 2019, has revealed that Defendant Garris and his girlfriend, Dana Jamison, were overserved alcohol by

1

Defendants Coast, LLC ("Coast") and C&L Travel, Inc. ("Mynt") in the hours preceding the fatal collision.

4. And despite Defendant Garris being overserved, Plaintiffs have also learned that Defendant Timothy Gregowicz ("Gregowicz")—a Mynt employee and recidivist drug dealer who has known Garris for more than 20 years—knew or had reason to know that Garris was under the influence of marijuana that night, yet Gregowicz still helped Garris and Ms. Jamison climb into their truck several minutes before the deadly collision.

5. As described more fully below, Defendants' negligent, grossly negligent, and reckless actions leading up to the fatal collision were all substantial factors that caused or contributed to the death of William Kappel, Jr., and the devastating personal injuries suffered by his wife Laura Kappel and their friend Jacqueline Zink.

## PARTIES

6. Plaintiff Laura Kappel is a resident of Cook County, Illinois. Mrs. Kappel is the duly appointed personal representative for the Estate of William Kappel, Jr (the "Estate").

7. Plaintiff Jacqueline Zink is a resident of Cook County, Illinois.

8. Defendant Thomas Cade Garris is a resident of Dorchester County, South Carolina.

9. Defendant Mynt is an Ohio corporation registered to do business in South Carolina. Mynt operates a nightclub located at 135 Calhoun Street, Charleston, SC 29401.

10. Defendant Timothy Gregowicz is a resident of Charleston County, South Carolina. At all times relevant to this case, Defendant Gregowicz was an employee of Defendant Mynt and acting within the course and scope of his employment.

11.   Defendant Coast, LLC is a limited liability company organized under the laws of South Carolina. Coast, LLC operates as Coast Bar & Grill, which is located at 39-D John Street, Charleston, SC, 29403.

## JURISDICTION & VENUE

12.   This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the case is between citizens of different states.

13.   This Court has personal jurisdiction over Defendant Garris because he resides in South Carolina and/or committed tortious acts in South Carolina that gave rise to this case.

14.   This Court has personal jurisdiction over Defendant Gregowicz because he resides in South Carolina and/or committed tortious acts in South Carolina that gave rise to this case.

15.   This Court has personal jurisdiction over Defendant Coast because it is organized under the laws of South Carolina, has its principal place of business in South Carolina, and/or committed tortious acts in South Carolina that gave rise to this case.

16.   This Court has personal jurisdiction over Defendant Mynt because it is registered to do business in South Carolina, has its principal place of business in South Carolina, and/or committed tortious acts in South Carolina that gave rise to this case.

17.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendants all reside in this District, and because a substantial part of the events or omissions giving rise to this case occurred in this District.

# FACTUAL ALLEGATIONS

## A.  THE COLLISION

18. In January 2019, Plaintiffs Laura Kappel, her husband William Kappel, Jr (deceased), and Jacqueline Zink all traveled to Charleston, South Carolina, from Chicago, Illinois, to visit their friend Joseph Murray, who resides in Mount Pleasant, South Carolina.

19. While leaving downtown Charleston in the early morning hours of January 26, 2019, Plaintiffs were all traveling eastbound on Columbus Street in Mr. Murray's 2016 Mazda sedan.

20. Mr. Murray was operating his car in a careful, safe, and cautious manner.

21. At the same time, Defendant Garris was driving a 2004 Ford F-150 truck bearing license plate number 4789HU, headed northbound on Meeting Street with his girlfriend Dana Jamison in the passenger seat.

22. Upon information and belief, Defendant Garris was driving recklessly at speeds reaching 70 mph, well beyond the posted speed limit on Meeting Street of 35 miles per hour (mph), and not paying attention to his surroundings as he approached the intersection of Meeting and Columbus Streets.

23. Defendant Garris was also driving while intoxicated and under the influence of illegal drugs.

24. As Mr. Murray's sedan entered the intersection of Meeting and Columbus Streets around 2:15 am, the traffic signal for vehicles headed eastbound on Columbus Street was green.

25. As Defendant Garris and Ms. Jamison entered the same intersection in his truck, the traffic signal for vehicles headed northbound on Meeting Street was red.

26. Without warning, Defendant Garris's truck collided violently with the passenger side of Mr. Murray's sedan, causing the vehicle to collide with a building on the northeast corner of the intersection.

27. Upon information, Defendant Garris was driving the truck at 56 mph at the moment of impact and did not apply his brakes to avoid the collision.

28. William Kappel, Jr. died as a result of the collision.

29. Plaintiff Laura Kappel sustained traumatic injuries as a result of the collision.

30. Plaintiff Jacqueline Zink sustained traumatic injuries as a result of the collision.

31. Defendant Garris was transported to MUSC from the scene of the collision, where his blood was tested for alcohol and drugs.

32. At approximately 3:00 am, Defendant Garris had a blood alcohol concentration of 0.191, over twice the legal limit in South Carolina.

33. A subsequent blood draw conducted by law enforcement revealed that Defendant Garris also had high levels of THC (delta-9-tetrahydrocannabinol)—the active ingredient in marijuana—and THC metabolite in his system at the time of the collision.

34. The high level of THC Garris had in his system at the time of the collision, by itself, materially and appreciably impaired his ability to safely operate a motor vehicle.

### B.    THE DEFENDANT BARS

35. Defendant Coast owns and operates Coast Bar & Grill, which is licensed to sell alcohol by the drink.

36. On January 25, 2019, employees of Coast served Defendant Garris and Ms. Jamison alcohol while Garris and Ms. Jamison were intoxicated.

37. Specifically, Defendant Garris and Ms. Jamison ordered, were served, and consumed numerous alcoholic beverages in a volume and manner that caused them to become intoxicated, regardless of the fact that Coast employees knew or should have known that they were both intoxicated.

38. After consuming numerous alcoholic beverages at Coast, Defendant Garris and Ms. Jamison left Coast in an intoxicated state.

39. Defendant Mynt owns and operates Mynt Nightclub, which is licensed to sell alcohol by the drink.

40. On January 25 and 26, 2019, Mynt employees served Defendant Garris and Ms. Jamison alcohol while Garris and Ms. Jamison were intoxicated.

41. Specifically, Defendant Garris and Ms. Jamison ordered, were served, and consumed numerous alcoholic beverages in a volume and manner that caused them to become grossly intoxicated, regardless of the fact that Mynt employees knew or should have known that they were intoxicated.

42. After consuming numerous alcoholic beverages at Mynt on January 25 and 26, 2019, Defendant Garris and Ms. Jamison became disruptive and were asked to leave Mynt.

43. Eventually, Defendant Garris and Ms. Jamison were escorted out of the bar by Mynt employees.

C. **DEFENDANT GREGOWICZ**

44. Defendant Gregowicz was working as a security guard for Mynt on January 25 and 26, 2019.

45. Defendant Gregowicz grew up in the same neighborhood as Defendant Garris.

46. Defendant Gregowicz has known Garris for over 20 years.

47. Defendant Gregowicz has seen Defendant Garris intoxicated on prior occasions.

48. Defendant Gregowicz has multiple felony drug convictions for illegally possessing marijuana and for intent to distribute marijuana.

49. At all relevant times, Defendant Gregowicz knew that Defendant Garris was arrested and charged with multiple drug offenses, including for the possession of, and intent to distribute, marijuana.

50. Defendant Gregowicz's felony drug convictions are all matters of public record.

51. Defendant Mynt never conducted a background check on Defendant Gregowicz before hiring, employing, and/or retaining him to work as a security guard at its nightclub.

52. Defendant Gregowicz knew or had reason to know that Defendant Garris was under the influence of marijuana while patronizing Mynt on January 25-26, 2019.

53. After Defendant Garris and Ms. Jamison were escorted out of Mynt on January 26, 2019, Defendant Gregowicz helped them climb into their truck just before the collision.

54. Defendant Gregowicz assisted Defendant Garris and Ms. Jamison into their truck despite knowing, or having reason to know, that Garris was under the influence of marijuana.

### FIRST CAUSE OF ACTION
(Negligence, Negligence *Per Se*, Gross Negligence, Recklessness by Defendant Garris)

55. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

56. At all times relevant to this action, Defendant Garris owed a duty to Plaintiffs and the public at large to operate his truck in a safe, cautious, and careful manner.

57. Defendant Garris breached this duty by, *inter alia*:

   a. driving while grossly intoxicated;

   b. failing to maintain a proper lookout;

7

    c.    failing to keep his truck under control;

    d.    driving far too fast for conditions;

    e.    violating applicable state traffic laws so as to constitute negligence *per se*;

    f.    driving at a grossly excessive rate of speed;

    g.    failing to monitor road and traffic conditions;

    h.    failing to monitor or obey traffic signals;

    i.    failing to stop to avoid a collision;

    j.    being otherwise negligent, grossly negligent, and reckless in his actions.

58.    Defendant Garris's wrongful conduct was a direct and proximate cause of Plaintiffs' collective injuries.

59.    Defendant Garris's negligence, gross negligence, and recklessness in causing the collision resulted in the death of William Kappel, Jr., and serious bodily injury to Plaintiffs Laura Kappel and Jacqueline Zink.

60.    Plaintiff Laura Kappel suffered severe physical injury as a result of severe emotional distress and psychological trauma she endured as a result of being in close proximity to, and witnessing, the death of her husband William Kappel, Jr.

61.    Due to the negligent, grossly negligent, and reckless actions of Defendant Garris, Plaintiffs are entitled to recover actual and punitive damages from Defendants, jointly and severally, as determined by a jury.

## S ECOND  C AUSE OF  A CTION
(Negligence, Negligence *Per Se*, Gross Negligence, Recklessness, Violations of
S.C. Code §§ 61-4-580 and 61-6-2220 by Defendant Coast)

62. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

63. While patrons of Defendant Coast on January 25, 2019, employees of Coast served Defendant Garris and Ms. Jamison alcohol while they were intoxicated in violation of S.C. Code §§ 61-4-580 and/or 61-6-2220.

64. Defendant Coast, individually or by and through its employees, agents, or representatives, owed Plaintiffs, and other members of the public, a duty of care to not allow patrons to become intoxicated, to not serve alcohol to intoxicated patrons, and to protect Plaintiffs and the general public from the consequences of patrons' intoxication.

65. Defendant Coast, individually or by and through its employees, agents, and legal representatives, breached these duties by allowing Defendant Garris and Ms. Jamison to become intoxicated on its premises and/or continuing to serve them alcohol after it knew, or should have known, they were intoxicated.

66. Defendant Coast is vicariously for any employee who serves alcohol to any intoxicated patron, including to Defendant Garris and Ms. Jamison.

67. Defendant Coast violated the statutory and common laws of South Carolina by:

   a. Serving Defendant Garris and Ms. Jamison to the point of intoxication, and/or by continuing to serve them alcohol after it knew, or should have known, they were intoxicated in violation of S.C. Code §§ 61-6-2220 and 61-4-580;

   b. Failing to adequately train its employees on responsible alcohol service practices;

9

   c. Negligently supervising its employees; and

   d. Any other means that will be discovered prior to trial.

  68. Because of Defendant Coast's wrongful conduct, Defendant Garris and Ms. Jamison left Coast in an intoxicated state.

  69. Defendant Garris's intoxication, the subsequent vehicle collision, and the damages incurred by Plaintiffs were all caused by, and the proximate result of, Defendant Garris and Ms. Jamison being overserved alcohol by Defendant Coast and its employees.

  70. Due to the negligent, grossly negligent, and reckless actions of Defendant Coast, individually or by and through its employees, agents, or legal representatives as set forth above, Plaintiffs are entitled to recover actual and punitive damages from Defendants, jointly and severally, as determined by a jury.

### THIRD CAUSE OF ACTION
(Negligence, Negligence *Per Se*, Gross Negligence, Recklessness, Violations of
S.C. Code §§ 61-4-580 and 61-6-2220 by Defendant Mynt)

  71. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

  72. While patrons of Defendant Mynt on January 25 and 26, 2019, employees of Mynt served Defendant Garris and Ms. Jamison alcohol while they were intoxicated in violation of S.C. Code §§ 61-4-580 and/or 61-6-2220.

  73. Defendant Mynt, individually or by and through its employees, agents, and legal representatives, owed Plaintiffs, and members of the general public, a duty of care to not allow patrons to become intoxicated, to not serve alcohol to its intoxicated patrons, and to protect Plaintiffs and the general public from the consequences of patrons' intoxication.

  74. Defendant Mynt, individually or by and through its employees, agents, and legal representatives, breached these duties by allowing Defendant Garris and Ms. Jamison to become

intoxicated on its premises, and/or continuing to serve them alcohol after it knew, or should have known, they were both intoxicated.

75. Under South Carolina common law, and the alcohol control statutes cited above, Defendant Mynt is vicariously liable for any employee who serves alcohol to an intoxicated patron, including to Defendant Garris and Ms. Jamison.

76. Defendant Mynt violated the statutory and common laws of South Carolina by:

   a. Serving Defendant Garris and Ms. Jamison alcohol after it knew, or should have known, they were intoxicated in violation of S.C. Code §§ 61-6-2220 and 61-4-580;

   b. Failing to adequately train its employees on responsible alcohol service practices;

   c. Failing to adequately train its employees; and

   d. Any other means that will be discovered prior to trial.

77. Because of Defendant Mynt's wrongful conduct described above, Defendant Garris and Ms. Jamison both left Mynt in an intoxicated state.

78. Defendant Garris's intoxication, the subsequent vehicle collision, and the damages incurred by Plaintiffs were all caused by, and the proximate result of, Garris and Ms. Jamison being overserved alcohol by Defendant Mynt and its employees.

79. Due to the negligent, grossly negligent, and reckless actions of Defendant Mynt, individually or by and through its employees, agents, or legal representatives as set forth above, Plaintiffs are entitled to recover actual and punitive damages from Defendants, jointly and severally, as determined by a jury.

**FOURTH CAUSE OF ACTION**
(Violations of the Drug Dealer Liability Act, S.C. Code §§ 44-54-10, *et seq.*
by Defendant Gregowicz)

80. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

81. Plaintiffs are entitled to bring this cause of action pursuant to S.C. Code § 44-54-40 because each has been injured as a result of the negligent, grossly negligent, and/or reckless actions of Defendant Garris, an individual user of an illegal controlled substance as defined by S.C. Code § 44-54-30.

82. Upon information and belief, Defendant Gregowicz sold or furnished marijuana, an illegal controlled substance as defined by S.C. Code § 44-54-30 and covered by S.C. Code § 44-53-10, *et seq.*, to Defendant Garris, including on January 25 and/or 26, 2019.

83. Under S.C. Code § 44-54-40, Defendant Gregowicz has knowingly participated in the marketing of marijuana within the same county in which Defendant Garris illegally used marijuana.

84. Under S.C. Code § 44-54-40, Defendant Gregowicz's participation in the illegal marketing of marijuana was connected with the same type of illegal controlled substance used by Defendant Garris.

85. Under S.C. Code § 44-54-40, Defendant Gregowicz has been convicted of the illegal possession with the intent to distribute marijuana in the same county, and during the same period, that Defendant Garris used marijuana.

86. As a foreseeable and proximate result of the negligence, gross negligence, and/or recklessness of Defendant Garris while he was under the influence of marijuana, William Kappel Jr. lost his life, and Plaintiffs Laura Kappel and Jacqueline Zink suffered serious and traumatic bodily injuries.

#### FIFTH CAUSE OF ACTION
(Negligence, Gross Negligence, Recklessness by
Defendants Mynt and Gregowicz)

87. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

88. At all relevant times, Defendants Mynt and Gregowicz had duties to safeguard patrons and the public from illegal drug use at Mynt, such that patrons and the public would not be placed at a heightened risk of incurring serious injury or death.

89. On January 25-26, 2019, Defendants Mynt and Gregowicz knew or had reason to know that Defendant Garris was under the influence of marijuana while patronizing Mynt, and that Garris was in no condition to drive after he was escorted out of Mynt.

90. Despite Defendants Mynt and Gregowicz knowing, or having reason to know, that Defendant Garris was under the influence of marijuana, Defendant Gregowicz helped Defendant Garris into his truck and watched him drive away just before the fatal collision.

91. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, and/or reckless conduct by Defendants Mynt and Gregowicz, William Kappel, Jr. lost his life, and Plaintiffs Laura Kappel and Jacqueline Zink suffered traumatic bodily injury.

#### SIXTH CAUSE OF ACTION
(Negligent, Grossly Negligent, and/or Reckless Hiring, Supervision,
Training, and Retention by Defendant Mynt)

92. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

93. At all relevant times, Defendant Mynt was responsible for the hiring, retention, and supervision of its agents, servants, or employees, including Defendant Gregowicz, who was hired, employed, and retained as a security guard for Mynt in the fall of 2018.

94. Defendant Mynt owed statutory and common law duties to Plaintiffs not to negligently hire, train, supervise, and retain its employees, agents, servants, or representatives.

95. At all times relevant, Defendant Mynt knew or should have known it had the authority and obligation to train, control, and supervise its employees, agents, or servants, including Defendant Gregowicz, on the hazards of illegal drug use by Mynt patrons such that third persons would not be placed at a heightened risk of incurring serious injury or death.

96. At all relevant times, Defendant Mynt knew or should have known that Defendant Gregowicz was a recidivist felony drug offender, including multiple convictions for his possession of and intent to distribute marijuana, who should not have been hired, employed, or retained to work security at a nightclub and entrusted to safeguard patrons and the public.

97. At all relevant times, Defendant Mynt knew or should have known that Defendant Gregowicz had a propensity for illegal drug use and distribution, and poor decision-making generally, and should not have been placed in a position of trust at a nightclub where patrons already create a heightened risk of harm to other patrons and the public.

98. Before hiring Defendant Gregowicz in the fall of 2018, Defendant Mynt never conducted a background check on him, which would have revealed Gregowicz's multitude of felony drug convictions.

99. Mynt did not provide Gregowicz with any training on how to properly discharge his duties to safeguard patrons and the public.

100. Despite knowing or having reason to know of the illegal drug activities and propensities of its agent, servant, or employee Timothy Gregowicz, Defendant Mynt still negligently, carelessly, and recklessly hired, trained, retained, and supervised Gregowicz in the conduct and performance of his various employment duties, including on January 25-26, 2019.

101. In the performance of his duties for Mynt on January 25-26, 2019, Defendant Gregowicz knew or had reason to know that Defendant Garris was under the influence of marijuana, and therefore in no condition to drive.

102. However, as a proximate result of Defendant Mynt's negligent, careless, grossly negligent, and reckless hiring, training, retention, and supervision of Defendant Gregowicz, Defendant Garris and Ms. Jamison were helped into their truck by Gregowicz shortly before the fatal collision.

103. As a direct, foreseeable, and proximate result of the negligent, grossly negligent, and/or reckless hiring, supervision, training, and retention of Defendant Gregowicz by Defendant Mynt, William Kappel, Jr. lost his life, and Plaintiffs Laura Kappel and Jacqueline Zink suffered traumatic bodily injury.

### SEVENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress
by all Defendants)

104. Plaintiffs incorporate all prior paragraphs as if set forth herein.

105. Plaintiff Laura Kappel was the wife of William Kappel, Jr.

106. All Defendants acted wrongfully as detailed above.

107. Each Defendants' wrongful conduct was a proximate cause of the collision that resulted in the death of William Kappel, Jr. and serious bodily injury to Plaintiffs Laura Kappel and Jacqueline Zink.

108. Plaintiff Laura Kappel has suffered traumatic physical injury as a result of severe emotional distress and psychological trauma she endured as a result of being in close proximity to, and witnessing, the death of her husband William Kappel, Jr.

## REQUEST FOR RELIEF

109. Plaintiffs incorporate all prior paragraphs as if fully set forth herein.

110. As a direct and proximate result of the wrongful conduct described above, Plaintiffs are entitled to recover as follows:

111. Plaintiff Laura Kappel, as personal representative of the estate of William Kappel, Jr., requests judgment against Defendants, jointly and severally, as follows:

    i. for actual damages including past medical costs, burial expenses, lost wages, and loss of earning capacity; and

    ii. non-economic damages including the conscious pain and suffering of William Kappel, Jr. prior to death, all of which survive his death under S.C. Code § 15-5-90;

112. Plaintiff Laura Kappel, individually and as the statutory beneficiary of the estate of William Kappel, Jr., requests judgment against Defendants, jointly and severally, as follows:

    i. for actual damages including past medical costs, future medical costs, and lost wages; and

    ii. non-economic damages including pain and suffering, grief, sorrow, loss of support, loss of household services, loss of consortium, and all other damages recoverable under S.C. Code § 15-51-40.

113. Plaintiff Jacqueline Zink requests judgment against Defendants, jointly and severally, as follows:

    i. for actual damages including past medical costs, future medical costs, lost wages, and loss of earning capacity; and

      ii.    non-economic damages including physical and emotional pain and suffering.

114.    In addition, all Plaintiffs seek the following:

      i.    punitive damages as determined by the trier of fact;

      ii.    reasonable attorney's fees;

      iii.    all costs of this Court; and

      iv.    any other such relief the Court deems just and proper.

### JURY TRIAL DEMANDED

A trial by jury is demanded as to all issues to the extent permitted by law.

Respectfully submitted,

July 30, 2019        **BY:   RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC**

/s/ D. Charles Dukes

Terry E. Richardson, Jr. (Fed. I.D. # 3457)
trichardson@rpwb.com
1730 Jackson Street
Barnwell, SC 29812
T: 803.541.7850
F: 803.541.9625

Matthew Nickles (Fed. I.D. # 11001)
mnickles@rpwb.com
1513 Hampton Street, First Floor
Columbia, SC 29201
T: 803.541.7850
F: 803.259.4403

D. Charles Dukes (Fed. I.D. # 11751)
cdukes@rpwb.com
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464

T: 843.727.6500
F: 843.216.6509

**A**TTORNEYS FOR **P**LAINTIFFS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 30, 2019, I caused the foregoing document to be served upon all counsel of record by operation of the Court's electronic filing system (CM/ECF).

/s/ D. Charles Dukes  
D. Charles Dukes (Fed. I.D. # 11751)
