IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LAURA KAPPEL, individually and as personal representative of the ESTATE OF WILLIAM KAPPEL, JR., and JACQUELINE ZINK, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:19-cv-498-DCN |
| vs. | ) ) | ORDER |
| THOMAS CADE GARRIS, COAST LLC d/b/a Coast Bar & Grill, C&L TRAVEL INC. d/b/a Mynt, and TIMOTHY GREGOWICZ, | ) ) ) ) | |
| Defendants. | ) ) | |

The following matter is before the court on defendant C&L Travel Inc. d/b/a Mynt's ("Mynt") motion to quash a subpoena, or in the alternative, for a protective order, ECF No. 51. For the following reasons, the court grants Mynt's motion.

## I.  BACKGROUND

On January 26, 2019, plaintiff Jacqueline Zink, plaintiff Laura Kappel, (collectively "plaintiffs"), Kappel's husband William Kappel, Jr., and a fourth person were travelling in a Mazda sedan in downtown Charleston. The Mazda was hit by defendant Thomas Cade Garris's ("Garris") truck at the intersection of Meeting Street and Columbus Street because Garris allegedly ran a red light. Garris was allegedly driving at a very high speed, and the accident was severe—Mr. Kappel died as a result of the collision, and the other three occupants were seriously injured.

When Garris's blood was drawn, his blood alcohol content was over twice the legal limit in South Carolina. In addition, a subsequent blood test revealed that Garris

1

also had high levels of THC and THC metabolite, the active ingredient in marijuana, in his system at the time of the collision. The police charged Garris with Felony DUI Resulting in Death, Felony DUI Resulting in Great Bodily Injury, and Reckless Homicide.

Plaintiffs allege that on the night of the collision, Garris was served alcohol at defendant Coast LLC's ("Coast") restaurant Coast Bar & Grill and at Mynt. In addition, plaintiffs alleged that defendant Timothy Gregowicz, who worked as a security guard for Mynt and who has known Garris for over 20 years, helped Garris climb into his truck just before the collision. The police served a search warrant on Mynt on February 5, 2019 for "sales receipts and video surveillance" from the night of the accident. Moreover, on February 7, 2019, plaintiffs' counsel hand delivered a preservation letter to Mynt that put Mynt on notice that it had a duty to preserve relevant evidence from the night of January 26. On April 17, 2019, plaintiffs' counsel personally served a subpoena on Mynt for "all hard drives and/or other electronic file storage devices that were in use as part of your video surveillance system . . . on January 25th and/or 26th, 209" and "copies of itemized receipts/bills for any person served on Mynt on January 25th and/or 26th, 2019." ECF No. 13 at 3. Plaintiffs received no response by the subpoena's May 9, 2019 deadline. After failed attempts to get a response from Mynt, plaintiffs filed an emergency motion to compel on May 15, 2019. ECF No. 13. Before the hearing on the motion, the parties resolved the issue, and Mynt permitted plaintiffs' IT consultant to image the surveillance DVR hard drive. Plaintiffs then retained Jim Stafford ("Stafford") to analyze the hard drive. Stafford found 16 consecutive days of surveillance footage prior to the DVR's decommission on April 4, but no footage from January 25–26. This capacity for 16 days

2

of storage led Stafford to conclude that footage from the night of the collision would have still been on the hard drive when police served the search warrant on February 5 and when plaintiffs' counsel delivered the preservation letter on February 7. Nevertheless, Mynt has never produced surveillance footage from the night of the collision.

In the amended complaint, plaintiffs bring claims for: (1) negligence, negligence per se, gross negligence, and recklessness against Garris; (2)–(3) negligence, negligence per se, gross negligence, recklessness, and violations of S.C. Code §§ 61-4-5870 and 61-6-2220 against Coast and Mynt; (4) violations of the Drug Dealer Liability Act, S.C. Code § 44-54-10 against Gregowicz; (5) negligence, gross negligence, and recklessness against Mynt and Gregowicz; (6) negligent, grossly negligent, and/or reckless hiring, supervision, training, and retention against Mynt; and (7) negligent infliction of emotion distress against all defendants. ECF No. 30. Relevant to the instant motion, on November 19, 2019, plaintiffs sent a third-party subpoena to Daniel Island CPAs LLC ("Daniel Island CPAs") seeking all documents related to Mynt for the last five years. ECF No. 51-1. Daniel Island CPAs is Mynt's accountant. On December 9, 2019, Mynt filed a motion to quash the subpoena. ECF No. 51. Plaintiffs responded on January 3, 2020, ECF No. 54, and Mynt replied on January 10, 2020, ECF No. 57. The motion is now ripe for review.

## II. STANDARD

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, "[a] command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). "Rule 45 adopts the standard codified in Rule

3

26 in determining what is discoverable." Artis v. Murphy-Brown LLC, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018). Pursuant to Rule 26,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Despite this broad scope of discovery, the court may limit discovery, including subpoenas, if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### III. DISCUSSION

Mynt argues that the subpoena should be quashed or that the court should issue a protective order because the request is overly broad, unduly burdensome, and not limited in scope. Mynt argues that its finances are not at issue in this action and do not relate to plaintiffs' claims. Mynt contends that while plaintiffs may be seeking financial information for the purposes of punitive damages, plaintiffs have not first made a prima facie showing that they are entitled to punitive damages as the law requires. Mynt also argues that the subpoena is an attempt to improperly circumvent Rule 34 of the Federal Rules of Civil Procedure because plaintiffs could have requested this information from Mynt through a standard discovery request as opposed to a third-party subpoena, which is especially true considering that discovery has just begun.

**A. Standing**

Before turning to the merits of the motion, the court first considers a question that neither party addresses—whether Mynt has standing to challenge a subpoena issued to

4

Daniel Island CPAs. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005). Potentially applicable here, "a party has no standing to challenge a subpoena issued to his or her bank seeking discovery of financial records because bank records are the business records of the bank, in which the party has no personal right." United States v. Gordon, 247 F.R.D. 509, 510 (E.D.N.C. 2007). However, the court need not consider whether this rule of law regarding banks would apply to CPAs because Mynt seeks, in the alternative, a protective order, and courts generally find that a party can seek a protective order for a third party subpoena. Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) (holding that a party without standing to quash a nonparty subpoena still has standing to seek a protective order over the documents sought by the subpoena); see also Charleston Equities, Inc. v. Winslett, 2018 WL 5778301, at *2 (D.S.C. Jan. 24, 2018) (same); HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 307 (D.S.C. 2013) (finding that the defendant had "standing to challenge the subpoenas under Rule 26 standards, regardless of whether it has standing to bring a motion to quash under Rule 45." (internal quotations omitted)). Therefore, the court finds that Mynt has standing to bring this challenge.

**B. Relevance**

First, Mynt argues that its financial information is not relevant to this action. The only potential relevancy that Mynt identifies is plaintiffs' claim of punitive damages; however, Mynt argues that only its net worth is relevant to that claim, and that before requiring Mynt to produce that information, plaintiffs must make a prima facie showing

that they are entitled to punitive damages. Plaintiffs respond by arguing that the information is relevant for two reasons. First, plaintiffs explain that they believe that a verdict in this case will exceed Mynt's insurance coverage, and if that's the case, then plaintiffs intend to pierce the corporate veil to secure additional assets from Mynt's shareholders and sister companies to satisfy the judgment. Second, plaintiffs argue that this information is clearly relevant to punitive damages and that plaintiffs have proffered enough evidence to make a prima facie showing of punitive damages. In its reply, Mynt argues that plaintiffs are asserting their corporate veil piercing theory for the first time and improperly do so because they did not include such a claim in their complaint. Mynt also argues that it is too premature to determine whether plaintiffs have made a prima facie showing of punitive damages.

    a. **Punitive Damages**

Beginning with punitive damages, there is no controlling authority that establishes a standard for what a plaintiff must show in order to discover a defendant's financial condition. See E.E.O.C. v. Envtl. & Demolition Servs., Inc., 246 F.R.D. 247, 249 (D. Md. 2007) ("There is no controlling Fourth Circuit authority on this question."). On the one hand, a court must consider defendants' privacy concerns and the potential abuse of claims to punitive damages; on the other hand, a court must be cognizant that justice demands a liberal discovery standard. Courts around the county have employed different standards to address these concerns. On the more protective end of the spectrum, courts require that a plaintiff survive summary judgment on the issue of punitive damages before it can discover evidence of a defendant's financial condition. See Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993). On the more liberal end,

courts allow plaintiffs to discover defendants' financial conditions by claiming an entitlement to punitive damages without requiring any showing thereof. See E.E.O.C. v. Envtl. & Demolition Servs., Inc., 246 F.R.D. 247, 249 (D. Md. 2007).

The majority of courts tend towards the liberal end. See id. (collecting cases). Courts in this district, however, have found a middle ground and require a plaintiff to make a prima facie showing of his entitlement to punitive damages before he can discover the defendant's financial condition, albeit not necessarily during summary judgment. See Moore v. BPS Direct, LLC, 2019 WL 2950082, at *2 (D.S.C. July 9, 2019) (". . . the documents related to Defendants' financial condition only become relevant if Plaintiff's claim for punitive damages is viable."); Cardoso v. Holder Constr. Co., 2017 WL 976315, at *2 (D.S.C. Mar. 14, 2017) (". . . Defendants' financial information may become relevant if Plaintiff makes a prima facie claim for punitive damages . . ."); Nix v. Holbrook, 2015 WL 791213, at *3 (D.S.C. Feb. 25, 2015) (". . . the court declines at this time to require production of sensitive financial documents until after Plaintiff has established the viability of his claim for punitive damages.").

Under South Carolina law, "[i]n order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights." Lister v. NationsBank of Delaware, N.A., 494 S.E.2d 449, 458 (S.C. Ct. App. 1997). Plaintiffs claim that they have "proffered evidence that is more than sufficient to make a prima facie showing of [d]efendants' willful, reckless, and wanton conduct on the night of the collision." ECF No. 54 at 8. Plaintiffs cite to the factual background section of their response brief and a New York state court case that considered whether a plaintiff could

recover punitive damages for a medical professional's act of altering or destroying medical records to evade potential malpractice liability. Gomez v. Cabatic, 159 A.D.3d 62, 64 (N.Y. App. Div. 2018). In doing so, plaintiffs seem to convolute the issue for which punitive damages would be sought. Based on the substance of the factual section of the response brief, which details the reasons why plaintiffs believe Mynt destroyed surveillance footage of the night of the collision, and the case they cited, it appears that plaintiffs think punitive damages are warranted for Mynt's alleged destruction of the surveillance footage. This is not so. Punitive damages would be awarded if a jury found that Mynt's actions <u>on the night of the collision</u> were willful, reckless, or wanton. Nothing in the factual section of the response brief cites to evidence of any such conduct, which is required to make a prima facie showing. See Mack v. Branch No. 12, Post Exch., Fort Jackson, 35 S.E.2d 838, 844 (S.C. 1945) ("Prima facie evidence of fact is in law sufficient to establish the fact, unless rebutted."); see also Moore, 2019 WL 2950082, at *3 (finding that the plaintiff made a prima facie showing of entitlement to punitive damages based on evidence presented by the plaintiff).

To be clear, after the benefit of discovery, plaintiffs may be able to make a prima facie showing that they are entitled to punitive damages from Mynt. The issue is that in plaintiffs' response brief, they only argue that they have made a prima facie showing of entitlement to punitive damages based on Mynt's alleged spoliation of evidence. Instead, plaintiffs need to make a prima facie showing that Mynt acted willfully, wantonly, or recklessly on the night of the collision, and plaintiffs simply point to no evidence to make such a showing. Plaintiffs do reference deposition testimony of Garris's girlfriend, Dana Jamison ("Jamison"), who was with Garris the night of the collision, as evidence that

Gregowicz gave shots of alcohol to Garris and Jamison at Mynt and then helped Jamison into Garris's car. ECF No. 54-9, Jamison Depo. 60:24–61:19; 93:25–94:13. Plaintiffs also mention third-party surveillance footage that shows Gregowicz putting Garris and Jamison into Garris's truck minutes before the collision. ECF No. 54 at 3. However, plaintiffs do not allege that Mynt is vicariously liable for Gregowicz's act of helping Jamison into Garris's truck. See Am. Compl. ¶¶ 87–91. Moreover, this section of the complaint alleges that Gregowicz helped Garris into his truck despite knowing or having reason to know that Garris was under the influence of marijuana, as opposed to being intoxicated, and plaintiffs cite to no evidence to support that allegation. To the extent plaintiffs allege that Mynt is vicariously liable for Gregowicz for serving shots to Garris and Jamison, see id. ¶ 75, plaintiffs cite to no evidence that Gregowicz knew or should have known that Garris and Jamison were intoxicated when he served them shots.

As such, at this time and based on the record currently before the court, plaintiffs have failed to make a prima facie showing that they are entitled to recover punitive damages from Mynt.

### b. Corporate Veil Piercing

Turning to plaintiffs' corporate veil piercing argument, plaintiffs argue that Mynt's financial information is relevant to a corporate veil piercing argument that they may make if Mynt's insurance policies do not cover the potential judgment. In response, Mynt argues that in order for plaintiffs to use this theory, they must assert a cause of action for corporate veil piercing in their complaint, and that because they failed to do so, they cannot assert this theory.

When discussing corporate veil piercing, South Carolina courts do so in terms of the theory operating as a claim or cause of action. See Oskin v. Johnson, 735 S.E.2d 459, 463 (S.C. 2012) ("An action to pierce the corporate veil under an alter-ego theory also lies in equity."); Drury Dev. Corp. v. Found. Ins. Co., 668 S.E.2d 798, 802 (S.C. 2008) ("[S]o long as the plaintiff has pled facts sufficient to survive a motion to dismiss as to the corporate liability claims and the alter ego claim, the trial court should move forward to determination of both matters."); Dumas v. InfoSafe Corp., 463 S.E.2d 641, 643 (S.C. Ct. App. 1995) ("An action to pierce the corporate veil is one in equity."); Sturkie v. Sifly, 313 S.E.2d 316, 317 (S.C. Ct. App. 1984) (referring to a "a common law action to pierce the corporate veil."). However, this court has permitted plaintiffs to pursue a corporate veil piercing theory even though it is not brought as a cause of action for the theory when the complaint's allegations puts the defendant on notice that the plaintiff may assert the theory. Univ. Med. Assocs. of Med. Univ. of S.C. v. UnumProvident Corp., 335 F. Supp. 2d 702, 707 (D.S.C. 2004). In that case, one of the defendant corporations argued that it was an improper party to the action because it was not party to the insurance contract at issue between one of the plaintiffs and the defendant insurance company, and in response, the plaintiffs argued that the defendant corporation exercised control over the insurance company, meaning plaintiffs could pierce the corporate veil and making the corporation a proper party. Id. The court permitted the plaintiffs to assert corporate veil piercing because the plaintiffs referred to the defendants collectively throughout the complaint and because correspondence related to the insurance claim at issue had been marked with the identifying marks of both the insurance company and the

corporation. The court concluded that this put the corporation on notice that plaintiffs planned to assert a corporate veil piercing theory.

Here, plaintiffs did not bring a cause of action for corporate veil piercing nor did they sufficiently put Mynt on notice that they intended to pursue this theory. None of Mynt's shareholders or sister companies are party to this lawsuit, and plaintiffs made no mention of those parties in the amended complaint. Therefore, not only did plaintiffs fail to put Mynt on notice that they planned to assert this theory, but it is also legally impossible for plaintiffs to assert the theory under the amended complaint. The court cannot pierce the corporate veil and find a party liable for paying a judgment when that party is not involved in the case. As such, the assertion of a corporate veil piercing theory does not make Mynt's financial information relevant.

In sum, the court finds that the information plaintiffs seek through the subpoena is not currently relevant to this action. Because the court finds the information to be irrelevant to this action at this time, the court declines to consider whether the subpoena is unduly burdensome or improperly limited in scope. The court also sees no reason to address plaintiffs' arguments regarding the allegation that Mynt deliberately destroyed the surveillance footage of the night of the collision, as it is not germane to whether the subpoena request for financial records is relevant to the claims in this action. As such, the court grants Mynt's requested protective order.

## III. CONCLUSION

For the reasons set forth above, the court grants Mynt's motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 12, 2020
Charleston, South Carolina**